FILED
2019 Aug-07  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **Tongela King,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | |
| | ) | |
| **Huntsville Senior Services, LLC d/b/a** | ) | **JURY DEMAND** |
| **Regency Retirement Village** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## I.   INTRODUCTION

Plaintiff Tongela King brings this action under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. 12111 *et seq.,* as amended,  and the Family Medical Leave of 1993, ("FMLA") as amended. Plaintiff alleges in violation of the law, Defendant discriminated against her, failed to accommodate her disability, and interfered with her rights under the FMLA.   Plaintiff is entitled to equitable relief, compensatory damages, liquidated damages, punitive damages, attorneys fees and costs.

## II.   JURISDICTION

1.      This Court has jurisdiction in accordance with 28 U.S.C. § 1331, 2201-2202, 29 U.S.C. §§ 22601 *et seq.*, 42 U.S.C. § 12117, and 42 U.S.C. § 12133.  Venue

is proper pursuant to 28 U.S.C. § 1391.

2.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the ADA.  Plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act.  Plaintiff also timely filed her Complaint within ninety (90) days of the receipt of a Notice of Right to Sue issued by the EEOC.  The FMLA does not require the exhaustion of administrative remedies.

III.   **PARTIES**

3.     Plaintiff, Tongela King, is a female citizen of the United States and a resident of the State of Alabama.  Plaintiff is a person with a disability as that term is defined under the ADA.  Plaintiff also has a serious health condition under the FMLA, and she was an employee eligible for benefits under that statute during the relevant time period.

4.     Defendant, Huntsville Senior Service, LLC (hereinafter "HSS") is an 'employer' under the FMLA, 29 U.S.C. § 2611(4), the ADA, and 42 U.S.C. § 12111(5).

5.     Huntsville Senior Service owns and operates a retirement home in the city of Huntsville, Madison County Alabama, as well as others in Birmingham Alabama, Tuscaloosa Alabama, Chattanooga Tennessee,  throughout the state.

6.     At its facilities in Alabama Tennessee, combined HSS employs more

than 500 individuals.

## IV.   **STATEMENT OF FACTS**

7.      Plaintiff is a female possessing a disability as defined by the ADA.

8.      Plaintiff started employment with defendant, on or about August 5, 2016 as a charge nurse.

9.      Plaintiff was previously diagnosed with a medical condition in 2013.

10.     As of January 21, 2018, HSS had employed Plaintiff for at least 12 consecutive and/or non-consecutive months and Plaintiff had worked more than 1250 hours in the prior 12-month consecutive period.

11.     On or around January 21, 2018, while at Defendant's facility, Plaintiff had an episode related to her serious health condition diagnosed in 2013.

12.     Defendant's staff placed Plaintiff in a wheel chair and took her downstairs where her daughter picked her up and then Plaintiff's husband took her to the emergency room.

13.     The next day, Plaintiff missed work and was seen by her primary care doctor, whom referred her to specialists (neurologist and cardiologist) and placed her off work through January 23, 2018, returning her to work on January 24, 2018 with  light duty restrictions.

14.     Plaintiff had to miss work on January 25, 2018, with Defendant's approval and knowledge, to attend an appointment with a neurologist.

15.     On January 29, 2018, after working her shift with defendant, Plaintiff went to a related appointment at the pain clinic.

16.     Then on February 2, 2018, Plaintiff had to miss work for an MRI, and then return to the neurologist on February 15, 2018.

17.     Plaintiff's first appointment with the cardiologist was February 14, 2018 and with Defendant's approval and knowledge, Plaintiff left work early that day to attend.

18.     On February 15, 2018,  Plaintiff also had a follow-up appointment with her primary care physician.

19.     Plaintiff had another follow-up appointment with her neurologist on February 19, 2018 and a follow-up with the cardiologist on February 20, 2018.

20.     Plaintiff had to go to the pain clinic again on February 26, 2018.

21.     Thereafter, Plaintiff had to miss work on March 7, 2018, with Defendant's approval and knowledge, to see a rheumatologist.

22.     Plaintiff continued to see these specialists over the course of the next several months.

23.     Defendant was aware of the health-related reasons why Plaintiff was missing work and/or leaving work early or coming in late.

24.     Defendant was aware of Plaintiff's need for intermittent leave under the FMLA.

25.     As the excerpts below show, Defendant was also aware Plaintiff needed an accommodation under the ADA where it had received no less than two notes from Plaintiff's primary care physician evidencing she needed light duty work.

| | |
|---|---|
| Patient: | KING, TONGELA E |
| In Care From: | Monday January 22, 2018 |
| In Care To: | Monday January 22, 2018 |
| Able to Return to Work on: | Wednesday January 24, 2018 |
| Nature of Illness or Injury: | |
| Light Work: | Restrictions: |
| Comments: | |

Signed *Dr. Marilyn Jigor | RL*

and,

| | |
|---|---|
| Patient: | KING, TONGELA E |
| In Care From: | Thursday April 26, 2018 |
| In Care To: | Sunday April 29, 2018 |
| Able to Return to Work on: | Monday April 30, 2018 |
| Nature of Illness or Injury: | |
| Light Work: | Restrictions: |
| Comments: | |

Signed

and,

5

Thu, May 10, 4:03 PM



26.     Each time Plaintiff returned to work with light duty restrictions, Defendant made no attempt to engage her and confer over the restrictions that were required and/or whether the Defendant could reasonably accommodate those needs.

27.     Defendant made no light duty accommodation and Plaintiff was required to perform the same duties as before as if no restrictions were ordered by her physician.

28.     As such, sometime in February of 2018, Plaintiff notified the unit manager, Bonnie Shell, that the workload without restrictions was too much for her and that she would need to go to a 32-hour schedule.

29.     Defendant did not accommodate Plaintiff's request for a 32-hour schedule, nor did it offer her intermittent leave under the FMLA in order to make a 32-hour workweek possible without accruing charges against her attendance.

30.     Plaintiff knew the 32-hour schedule was an option because she knew other nurses that were working such a schedule, and they were charge nurses too.

31.     In response to Plaintiff's request for a reduced schedule, Bonnie Shell told Plaintiff she was trying to hire more nurses to reduce Plaintiff's work load.

32.     The staffing never reached a point sufficient to accommodate Plaintiff's needs, and Ms. Shell never placed Plaintiff on a 32-hour schedule as requested.

33.     Consequently, Plaintiff notified Bonnie Shell on Monday, May 7, 2018, that she was applying for a Staff Development/ Medical Records position. *see* below:



34.     Plaintiff was qualified for the position and the demands of this position better suited the needs of her disability.

35.     In response, the next day Bonnie Shell took Plaintiff to human resources and advised her in front of an HR representative that the position was filled

7

5-days earlier.

36.    Plaintiff knew this was untrue because the position was not posted during that period and the position was not vacated until May 3, 2018 when Valerie ("LNU") was removed from the position at the end of her shift by way of involuntarily termination.

37.    Plaintiff was better qualified than the person placed in the open position and the individual awarded the position did not possess a disability.

38.    On May 10, 2018 at approximately 2:00 AM, Plaintiff started experiencing complications associated with her serious health condition necessitating a visit with her primary care physician and a change in her prescriptions.

39.    Due to complications, Plaintiff's primary care doctor wrote her off work through May 17, 2016, again returning her to work with light duty restrictions on May 18, 2018.

40.    On May 10, 2018, Plaintiff called Bonnie Shell and advised her  that she could not work on May 11, 2018 as scheduled and consistent with the excerpt below, Plaintiff followed that call up with a text message of the excuse her primary physician provided.

Thu, May 10, 4:03 PM



41.     Because of her need for intermittent leave, her need for an accommodation, and request for an accommodation, that same day May 10, 2018, Defendant decided to start an investigation and fabricate a reason for Plaintiff's termination.

42.     As part of this scheme, unbeknownst to Plaintiff, that same day Bonnie Shell approached two Caucasian RA nurses and requested they each give a statement against Plaintiff alleging patient abuse. *see* excerpt below, Co-worker's declaration,

5/21/18

On May 10th Bonnie called me to the office downstairs. When I didnt go down there she came up to the floor to walk me down to the office. When I got in there Bonnie started telling me and another employee that she really needed us to write a staement about Tongela. She told us that she had lots of complants about her and how she is rude or mean to the residents. I told her

43. Plaintiff experienced additional complications related to her serious health condition/disability before her May 18, 2018 return to work date, and her specialist wrote her off work through May 31, 2018, returning to Defendant on June 1, 2018, to test whether her health condition/disability improved while working a reduced schedule.

44. Consistent with this plan, since Defendant would not reduce Plaintiff's schedule as requested, Plaintiff worked PRN for Heritage Living during this time, 3 days a week with half the patient load assigned to her.

45. On May 21, 2018 around 11:28 AM, Defendant's administrator, Amber Thompson, texted Plaintiff requesting her to come in and discuss medical leave. *see* below.

10



46.     That afternoon, around 4:19 PM, Plaintiff received a message from Defendant's executive administrator, Tim Taylor, advising her to call him because the defendant was opening an investigation involving her. *see* excerpt below.

47.     Plaintiff returned his call shown below, less than 5 minutes later and left a message, but he never returned her call.



48.     Plaintiff had a follow-up appointment with her primary care physician on May 24, 2018, to discuss among other things, how she was handling the reduced schedule.

49.     Amber Thompson and Tim Taylor confirmed they were aware of Plaintiff's need for medical leave/accommodation, yet the very next day, May 22, 2018, Defendant posted an advertisement to fill Plaintiff's position. *see* the following excerpt,



50.     Then on May 28, 2018, Plaintiff learned she was not on the June 2018

schedule. *see* the excerpt below.

| JUNE 2018 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| 1ST SHIFT | F | S | S | M | T | W | T | F |
| LAKISHA 3/2020 | X | X | X | 2 | 2 | 2 | X | 2 |
| KAJESHA 12/2019 | X | 3 | 3 | 3 | 3 | 1 | 1 | X |
| TINA | X | X | X | 4 | 4 | 4 | 4 | X |
| ANGELICA | 1 | 1 | 1 | X | 1 | 3 | 3 | R |
| GWEN 8/2019 | | | | | | | | |
| EUNICE 7/2019 | A 4 | 4 | 4 | A | X | X | X | X |
| LATINA | | | | | | | | 4 |
| PAMELA G. | 3 | | | | | | | 3 |
| TIESHA | | | | | | | | |
| BRIDGETTE | 4 | | | | | | | |
| MARIE | 2 | | | 1 | | | 2 | A |
| PAMELA R. | | | | | | | | |
| YOLANDA | 2? | | | A? | | | A | 1 |
| NEED | | | | | | | | |

51. Throughout Plaintiff's employment, Defendant was satisfied with her job performance up until her health condition/disability caused her to miss work intermittently and to need an accommodation.

52. Only once during her employment was Plaintiff counseled verbally for being "too hard" on certain aids that continued to leave patients in soiled beds, like the following.



53. When Plaintiff returned to work on June 1, 2018 as scheduled and consistent with her physician's orders, Defendant had blocked her access to the

building. *see* excerpt below.



54.     Subsequently, Plaintiff called Bonnie Shell and let her know she was reporting for duty, but could not clock-in.

55.     In response, she told Plaintiff to come back and speak with Amber Thompson.

56.     Plaintiff told Bonnie Shell she could wait for Amber Thompson. Plaintiff waited for an hour and Amber Thompson did not arrive, so Plaintiff left and waited for a phone call.

57.     No one from the defendant's organization contacted Plaintiff until June 6, 2018, and that individual advised her she was terminated and would not receive accrued paid PTO.

58.     Plaintiff did not resign her employment at any time prior to learning she had been locked out of Defendant's system, however Defendant's UltiPro system evidences she voluntarily quit, and this notation in the system was made on May 23, 2018. *see* below.



And,

59.     In the alternative, Defendant, without undue hardship, could have accommodated Plaintiff's disability by reducing her workload, reducing her schedule, and/or excusing her absences related thereto.

60.     As a result of Defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment.   Additionally, Plaintiff has suffered injury, including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

## V.   CAUSES OF ACTION

### A.   FMLA INTERFERENCE

61.   Plaintiff reasserts and incorporates the paragraphs above.

62.   Plaintiff was an eligible employee under 29 C.F.R. §825.110. She had a serious health condition pursuant to 29 U.S.C. §2612 and 29 C.F.R. §825.113, and she was entitled to take leave for that serious health condition.

63.   Defendant is an employer in accordance with 29 U.S.C. §2611, 29 C.F.R. §825.104, and 29 U.S.C. §825.106.

64.   Plaintiff's absences should have been covered as protected leave under the FMLA.

65.   Defendant interfered with and effectively denied Plaintiff FMLA benefits in violation of the 29 C.F.R. §825.220.

66.   Defendant violated the FMLA, 29 U.S.C. §2614, *inter alia*, by failing or refusing to approve leave, by disciplining Plaintiff for absences that should have been covered as protected FMLA leave, and by involuntarily terminating Plaintiff based on those absences and classifying the same as a voluntary termination.

67.   Defendant also failed to provide Plaintiff with timely notice of her rights under the FMLA.  29 C.F.R. §825.300.

68.   Defendant's actions were willful and unreasonable.

69.   As a result of Defendant's actions and inactions, Plaintiff has suffered

extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

### B. TITLE I OF THE AMERICANS WITH DISABILITIES ACT – DISPARATE TREATMENT AND FAILURE TO ACCOMMODATE.

70.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58 above with the same force and effect as if fully set out in specific detail herein below.

71.     Under Plaintiff's disability discrimination claim, Plaintiff states that (1) she is disabled within the meaning of the ADA; (2) she was otherwise qualified to perform the essential functions of the job for which she applied, with or without a reasonable accommodation, and the position was given to a lesser qualified candidate; and (3) she suffered adverse employment decisions because of her disability.

72.     Plaintiff is an individual with a disability under the ADA in that she has a condition which substantially limits at least one major life activity and/or she is regarded as such and/or has a record of a disability.  42 U.S.C. §12102.

73.     Defendant was aware of Plaintiff's disability, a) Plaintiff requested that Defendant accommodate her disability by reducing her workload, b) Plaintiff requested that Defendant accommodate her disability by placing her on a 32-hour

schedule, c) Plaintiff requested that Defendant accommodate her disability by placing her in an open position for which she was best qualified that met the needs of her disability, d) Defendant failed to engage Plaintiff in the interactive process necessary to a determination of whether any of these accommodations were reasonable, and e) Defendant subjected Plaintiff to disparate treatment when compared to individuals needing leave under the FMLA possessing no disability, resulting in her termination while out of work on leave that should have otherwise been protected under the FMLA.  *see* also 42 U.S.C. §12112.

74.    Defendant has imposed rules and standards which are not consistent with business necessity. These rules as applied have the effect of discriminating against the Plaintiff based on her disability.  42 U.S.C. §12112(b)(6).

75.    Defendant's termination of Plaintiff was unlawful and constitutes discrimination against a qualified individual based on a disability, a perceived disability and/or a record of disability.

76.    Defendant has intentionally, maliciously and with reckless indifference discriminated against Plaintiff based on her disability, her perceived disability and/or her record of a disability with regards to termination, transfer, and other terms and conditions of employment.  42 U.S.C. §12112.

77.    Accommodating Plaintiff's disability would not have posed an undue hardship for Defendant.

78.     Plaintiff suffered damages as a result of Defendant's actions in denying her a reasonable accommodation, failing to engage her in the interactive process, subjecting her to disability-based disparate treatment and terminating her employment.

## VI.   **RELIEF**

**WHEREFORE**, it is respectfully prayed that this Court grant to Plaintiff the following relief:

a.      Issue a declaratory judgment that Defendant's actions, as described in the Complaint, are unlawful and willful, in violation of the FMLA and Title I of the Americans with Disabilities Act;

b.      Issue an Order directing and requiring Defendant to pay Plaintiff damages for mental anguish, lost wages, salary, employment benefits, or other compensation reduced, denied, or lost by reason of Defendant's FMLA and/or ADA violations;

c.      Issue an Order directing and requiring Defendant to pay Plaintiff liquidated damages pursuant to the FMLA in an amount equal to and in addition to the amount of lost wages, salary, employment benefits, or other compensation owed to her, and punitive and compensatory damages pursuant to the ADA;

d.      Issue an Order directing and requiring Defendant reinstate Plaintiff, or award Plaintiff front pay if no position is available or reinstatement is not

appropriate; and,

      e.     Issue an Order directing Defendant to reimburse Plaintiff for the costs and attorney's fees expended in the course of litigating this action, and pre-judgment and post-judgment interest.

      f.     Provide Plaintiff with such other and further relief, as the Court deems just and equitable.

Respectfully submitted,


/s/   Robert J. Camp
Robert J. Camp
**Counsel for Plaintiff**



**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500



PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.

/s/ Robert J. Camp
**OF COUNSEL**

Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.

**Defendant's Address:**
**National Registered Agent, Inc.**
**c/o Huntsville Senior Services, LLC**
**2 North Jackson Street Suite 605**
**Montgomery, AL 36104**

/s/ Robert J. Camp
**OF COUNSEL**